1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ANTONIO FRAUSTO,<br><br>              Plaintiff,<br><br>         v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>              Defendant. | Case No. 1:21-cv-01132-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 16, 18) |

**I.**

**INTRODUCTION**

Luis Antonio Frausto ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  Plaintiff argues the ALJ erred by: (1) finding the opinion from Dr. Marie Flores ("Dr. Flores") not persuasive without proper consideration of the supportability and consistency of the opinion with the record; and (2) by failing to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failing to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.  (ECF No. 16.)  For the

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 10, 11, 20.)

reasons explained herein, Plaintiff's social security appeal shall be denied.

## II.

## BACKGROUND

### A.    Procedural History

On October 24, 2018, Plaintiff filed a Title II application for a period of disability insurance benefits, alleging a period of disability beginning on July 1, 2017.  (AR 169-170.) Plaintiff's application was initially denied on December 19, 2018, and denied upon reconsideration on March 13, 2019.  (AR 92-96, 98-102.)  Plaintiff requested and received a hearing before Administrative Law Judge Debra Denney (the "ALJ").  Plaintiff appeared for a hearing before the ALJ on August 13, 2020.  (AR 35-60.)  On October 30, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 17-34.)  The Appeals Council denied Plaintiff's request for review on May 28, 2021.  (AR 11-16.)

On July 26, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On March 22, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 12.)  On July 5, 2022, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 16.)  On August 19, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 18.) Plaintiff did not file a reply brief.

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, October 30, 2020:

- The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
- The claimant has not engaged in substantial gainful activity since July 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).
- The claimant has the following severe impairments: degenerative joint disease, degenerative disc disease, neuropathy, and obesity (20 CFR 404.1520(c)).
- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

- The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations. The claimant can lift 25 pounds occasionally and 25 pounds frequently. The claimant can frequently climb ramps and stairs. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant can overhead reach with the right dominant upper extremity frequently, not constantly. The claimant can sustain a routine and maintain attendance under the above limitations.

- The claimant is unable to perform any past relevant work (20 CFR 404.1565).

- The claimant was born on August 9, 1975 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

- The claimant has at least a high school education (20 CFR 404.1564).

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

- The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

(AR 20-30.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq.  The regulations are generally the same for both types of benefits.  Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1  conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

2  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

3      "[A] reviewing court must consider the entire record as a whole and may not affirm

4  simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

5  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not

6  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

7  for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

8  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

9  upheld.").

10                                   **IV.**

11                      **DISCUSSION AND ANALYSIS**

12      Plaintiff argues the ALJ erred by: (A) finding the opinion from Dr. Flores not persuasive

13  without proper consideration of the supportability and consistency of the opinion with the record;

14  and (B) by failing to include work-related limitations in the RFC consistent with the nature and

15  intensity of Plaintiff's limitations, and failing to offer clear and convincing reasons for rejecting

16  Plaintiff's subjective complaints.

17      **A.    The ALJ's Evaluation of Dr. Flores' Opinion**

18      Plaintiff argues the ALJ erred in weighing the opinion of Dr. Flores.  (Br. 14-17.)

19      1.    The 2017 Regulatory Framework for Weighing Medical Opinions

20      The Social Security Administration revised its regulations regarding the consideration of

21  medical evidence — applying those revisions to all claims filed after March 27, 2017.  See

22  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL

23  168819, *5844 (Jan. 18, 2017).  Plaintiff filed her claim on October 3, 2018, therefore, the

24  revised regulations apply.  See 20 C.F.R. § 404.1520c.  The Ninth Circuit has now expressly held

25  that the 2017 regulations supersede the previous standards enunciated by the Ninth Circuit under

26  previous regulatory standards:

27              As a threshold matter, we must decide whether recent changes to
             the Social Security Administration's regulations displace our
28              longstanding case law requiring an ALJ to provide "specific and

legitimate" reasons for rejecting an examining doctor's opinion. We conclude that they do. For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence. Because substantial evidence supports the ALJ's decision here, we affirm.

Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022).

Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[3] Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. See 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

"When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a)-(c)(1)-(5), 416.920c(a)-(c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) or

---

[3] The regulations at 20 C.F.R. § 404.1501 et seq., reference the regulations which apply to disability insurance benefits, and the regulations at 20 C.F.R. § 416.901 et seq. apply to supplemental security income, though the regulations are generally the same for both types of benefits.

prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Accordingly, the ALJ must explain in the decision how persuasive they find a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Additionally, the ALJ "may, but [is] not required to, explain how [they] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

The "treating source rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017). The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. See 20 C.F.R. §§ 404.1520c, 416.920c; 82 FR 5844-01, 2017 WL 168819, at *5852–53 (eliminating "treating source rule"). In sum, the requirement that an ALJ provide "clear and convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion no longer applies, as this "measure of deference to a treating physician is no longer applicable under the 2017 revised regulations." Jean T. v. Saul, No. 20CV1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021); see also, e.g., Jones v. Saul, No. 2:19-CV-01273 AC, 2021 WL 620475, at *7-10 (E.D. Cal. Feb. 17, 2021) (finding the new regulations valid and entitled to Chevron deference, and because prior case law "is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override" it); Meza v. Kijakazi, No. 1:20-CV-01216-GSA, 2021 WL 6000026, at *6 (E.D. Cal. Dec. 20, 2021) ("courts in this circuit have rejected the notion that the treating physician rule still pertains to claims filed after March 27, 2017").

Nonetheless, the new regulations still require the ALJ to explain his reasoning and to specifically address how he considered the supportability and consistency of the opinion.  20 C.F.R. §§ 404.1520c, 416.920c; see P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.") (citation omitted).  As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence.

### 2.    The Court finds No Error in the ALJ's Weighing of Dr. Flores' Opinion

On July 8, 2020, Dr. Flores, Plaintiff's primary care provider, filled out a four-page medical source statement checkbox form.[4]  (AR 776-79.)  Dr. Flores checked boxes indicating that Plaintiff was limited to less than sedentary work with the ability to handle, finger, and reach overhead 0% of the day, and reach in front 10% of the day.  (AR 776-79.)  Dr. Flores listed diabetes with peripheral neuropathy and chronic pain under diagnoses, and attributed the limitations to symptoms of pain, weakness, vomiting, nausea, and numbness. (AR 776-78.)  Where asked to identify the location and severity of the pain, Dr. Flores wrote "severe in back and feet."  (AR 776.)  Dr. Flores opined Plaintiff could rarely lift less than 10 pounds, and never lift more than 10 pounds.  (AR 778.)  Dr. Flores opined Plaintiff could never twist, never stoop,

---

[4] The fact a physician uses a check box form without providing concurrent explanation does not necessarily equate to the opinion being unsupported by substantial evidence, and an ALJ may not reject an opinion solely for being in such form.  See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (finding ALJ "failed to recognize that the opinions expressed in check-box form in the February 2008 PFC Questionnaire were based on significant experience with Garrison and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."); Esparza v. Colvin, 631 F. App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes . . . [t]he treating physician's extensive notes are consistent with the check-box forms and provide the basis for his opinions.").  Clear however, is that an ALJ may discount an unexplained check box form opinion that is unsupported or inconsistent with the treatment records from that medical provider.  See id.; Flowers v. Colvin, No. 3:16-CV-05025 JRC, 2016 WL 4120048, at *3 (W.D. Wash. Aug. 3, 2016) ("As an initial matter, discrediting a doctor's opinion simply because he used a check box form is not valid unless that opinion is inconsistent with the underlying clinical records . . . to the extent that the ALJ discounted Dr. Trowbridge's opinion simply because the opinion was contained on a check box form, the ALJ committed legal error.").  The Court presumes that even after the 2017 regulations, an ALJ still cannot simply reject a physicians' opinion simply for being in such form, when the opinion is in fact supported by the treatment record.  Here, the ALJ did not mention the fact the opinion was a check-box form.

1   never crouch or squat, rarely climb stairs, and never climb ladders.  (Id.)  Dr. Flores opined

2   Plaintiff was incapable of even "low stress" work due to too much pain, nausea, and numbness.

3   (Id.)  Dr. Flores opined Plaintiff would need to take unscheduled breaks every one hour, needing

4   to rest for an average of 30 minutes before returning to work, due to muscle weakness.  (AR

5   777.)

6          The ALJ weighed Dr. Flores' opinion as follows.

7              The treating source statement of Marie Flores, M.D., is not
               persuasive (Exhibit 13F). The limitations given are poorly
8              supported, including extensive manipulative limitations. Though
               the source indicated the claimant to have neuropathy, treating notes
9              have generally found this to be of the lower extremities, not the
               upper extremities. Weakness was noted as particular problem,
10             which has not been noted in the source's treating notes or has not
               been consistently observed as well, including by the claimant's
11             podiatrist and endocrinologists (Exhibits 3F; 10F/162; 11F; 12F).
               Contrary to indications that the claimant has chronic pain that
12             affects his ability to sustain work, treating notes as of August 2020
               noted no particular reports of joint swelling, joint or muscle pain,
13             or other symptoms and good management of chronic pain on
               current treatment (Exhibit 16F/9).
14

15  (AR 28.)

16         Plaintiff argues the ALJ's finding of poor support for the limitations was not supported

17  by substantial evidence, because the ALJ's conclusions regarding support in the record is

18  contradicted by the treatment notes.  Plaintiff then somewhat perplexedly states that "with

19  respect to supportability, the ALJ wholly failed to explain how this factor was considered . . .

20  [t]he ALJ skipped this factor entirely and only discussed whether the opinion was consistent with

21  treating notes [and] [t]he ALJ's failure to consider Dr. Flores's detailed explanations regarding

22  the ways in which Plaintiff's symptoms limit his functioning is legal error and requires remand."

23  (Br. 15-16.)

24         Plaintiff does not dispute that "the *profound* sensory loss in Plaintiff's lower extremities

25  is more thoroughly documented, particularly in light of the significant podiatry records

26  evaluating Plaintiff's feet as frequently as weekly."  (Br. 16 (emphasis in original).)  However,

27  Plaintiff argues the fact he experienced worse neuropathy in his feet does not mean the

28  neuropathy in his hands or arms did not cause functional limitations, and this neuropathy and

dysfunction is well documented in that: pain management records document tingling, burning or weakness in both the "hands and feet," and examination findings document reduced range of motion and pain in the right upper extremity. (AR 476, 481, 486.)  Plaintiff emphasizes nerve conduction studies of the bilateral lower and right upper nerves were abnormal, with evidence of large fiber peripheral polyneuropathy consistent with diabetes. (AR 490.)

Plaintiff argues while the ALJ asserted Dr. Flores' opinion regarding "weakness" was not noted in Dr. Flores' notes or the records from other providers, this wholly ignores the fact that Dr. Flores assessed Plaintiff with "physical deconditioning," (AR 369), and referred him to physical therapy in part due to weakness, and was treated with "strengthening exercises."  (AR 271, 273, 369, 782, 805, 812.)  Plaintiff notes physical therapy assessments indicated strength as poor as 3-/5, and pain management records similarly document reduced strength in the lower extremities.  (AR 471, 477, 800.)  Plaintiff notes Dr. Lewis recommended physical therapy for "plantar fasciitis and lower leg weakness and instability."  (AR 750, 753, 758.)  Therefore, Plaintiff submits the ALJ's assertion that weakness "has not been consistently observed" is contradicted by these records, which show weakness that required specialized treatment.

As for pain management, Plaintiff emphasizes the ALJ referenced a single treatment encounter in August 2020 to assert chronic pain was not supported because it was well managed (AR 28, 888), however, that record notes that Plaintiff "has pending pain management referral" for specialized treatment of pain.  Plaintiff states that while the record notes he was "doing well," the overall context does not suggest that pain was no longer a limiting factor, and even assuming Plaintiff presented at some appointments with well-managed pain, the ALJ is required to consider the record as a whole, and not simply the periods where Plaintiff experienced improvement, unless that improvement is sustained.  Plaintiff argues the ALJ offered no evidence to support the suggestion that Plaintiff's pain was well-managed throughout the relevant period, and his regular treatment for chronic pain contradicts this assertion.

Finally, Plaintiff emphasizes records detailed at length above document significant clinical findings, including the fact that Plaintiff was originally wheelchair-bound and subsequently required a cane for ambulation due to pain and poor balance; and the repeated

1    observations of pain, tenderness, and a cane-assisted gait are entirely consistent with Dr. Flores'

2    opinion that Plaintiff has limited ability to stand and walk and requires a cane.

3         Again, while the use of a check-box form without concurrent explanation is not in of

4    itself a rationale for rejecting it, if supported elsewhere, Plaintiff only cites to the check-box form

5    (AR 776-78) for the proposition that Dr. Flores provided detailed explanations for how

6    Plaintiff's symptoms limit his functioning, and the Court does not find such detailed

7    explanations, nor evidence cited by Plaintiff in the record that would compel a finding the ALJ

8    erred in finding the opinion unsupported.  Rather, the Court finds the ALJ's reasons provided for

9    discounting Dr. Flores' opinion to be supported by substantial evidence.

10        The Court finds no merit to the Plaintiff's suggestion the ALJ skipped the supportability

11   factor entirely.  Here, the ALJ found: "limitations given are poorly supported, including

12   extensive manipulative limitations.  Though the source indicated the claimant to have

13   neuropathy, treating notes have generally found this to be of the lower extremities, not the upper

14   extremities."  (AR 28.)  Plaintiff attempts to argue the ALJ's analysis only pertained to

15   consistency and not supportability: "the ALJ asserted that the opinion was inconsistent with the

16   record because the manipulative limitations are inconsistent with records showing that

17   neuropathy primarily affects Plaintiff's lower extremities, rather than this hands and arms."  (Br.

18   16.)  The Court finds that while there may be overlap between the ALJ's findings that could be

19   applied to either the supportability or consistency factors, the Court finds the ALJ's findings as

20   to both supportability and consistency to be supported by substantial evidence in the record.

21        The "more relevant the objective medical evidence and supporting explanations presented

22   by a medical source are to support his or her medical opinion(s) or prior administrative medical

23   finding(s), the more persuasive the medical opinions or prior administrative medical finding(s)

24   will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Here, the ALJ compared Dr. Flores'

25   medical opinion regarding extensive manipulative limitations (zero to ten percent of the abilities

26   of handling, fingering and reaching) to treatment notes showing issues generally with Plaintiff's

27   lower extremities—not his upper extremities.  (AR 28.)  As Defendant highlights, in an

28   examination the day before Dr. Flores completed her check box questionnaire, Plaintiff was

1   assessed as having impairments related to his cervical, thoracic, and lumbar regions, but was not

2   documented as having any complaints regarding his manipulative abilities.  (AR 901-02.)  While

3   Plaintiff argues that the fact he experienced worse neuropathy in his feet does not detract from

4   the limitations in his hands, the ALJ emphasized that Dr. Flores reported extensive manipulative

5   limitations, opining that Plaintiff could handle and finger 0% of the time (AR 778), and thus

6   opined that Plaintiff was completely unable handle or finger at all.  The Court agrees with

7   Defendant that while Plaintiff argues treatment records showed significant findings in his "hands

8   and feet" (Br. 14), this narrowly interprets those records and does not consider the other

9   contemporaneous observations that contradict Plaintiff's contention and Dr. Flores' contention of

10  extreme manipulative limitations (AR 476 (denies joint stiffness painful joints, swollen joints

11  and weakness; AR 478 (pain in right shoulder and foot, but not hands); AR 481 (same); AR 483

12  (pain in right shoulder but not hands); AR 486 (denies swollen joints and weakness); AR 488 (no

13  treatment for any hand related impairments)).

14       Significantly, Plaintiff was specifically asked at the hearing whether his neuropathy

15  affected his hands or just his feet:

16            [ALJ]  Okay.  You mentioned neuropathy.  Are you having
              neuropathy in your lower extremities or all your extremities?
17
              [Plaintiff] What was that?
18
              [ALJ] The neuropathy, is it in your hands or is it in your feet?
19
              [Plaintiff] In my feet.
20

21  (AR 54.)  The ALJ noted weakness was not noted as a particular problem in Dr. Flores'

22  treatment notes (AR 28, citing AR 410 (negative for extremity weakness during examination

23  with Dr. Flores); AR 334-434 (treatment records at United Health Centers, where Dr. Flores

24  worked, that lacked complaints or documentation of muscle weakness)).  Plaintiff submitted no

25  reply to address this evidence of record relied upon by the ALJ, as highlighted by Defendant in

26  opposition.  The Court finds the ALJ properly discounted Dr. Flores' opinion because the

27  treatment records did not support the extreme limitations she assessed.  20 C.F.R. §§

28  404.1520c(c)(1), 416.920c(c)(1); Smolen, 80 F.3d at 1279 ("Substantial evidence" means more

than a scintilla, but less than a preponderance); <u>Burch</u>, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ found Dr. Flores' opinion of extreme limitations in conflict the objective medical evidence, including treatment notes from August 2020 showing no reports of joint swelling, joint or muscle pain, or other symptoms (AR 28, 888); and found Dr. Flores' opinion inconsistent with the good management of Plaintiff's pain on his current treatment (AR 28, 888 ("Doing well on current therapy, no side effects")). While Plaintiff argues the ALJ only provided one citation in support of Plaintiff's management of symptoms with treatment, as discussed below, the record repeatedly documented Plaintiff's improvement when he was compliant with treatment, and thus the finding is supported by substantial evidence in the record, and Plaintiff has not demonstrated a different result is compelled, nor even responded to the Defendant's arguments and records cited in opposition. The Court finds the ALJ's reliance on the stability of treatment as part of her conclusions is not error, and is supported by substantial evidence in the record. <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The Court finds the ALJ properly discounted Dr. Flores' opinion because the treatment records were inconsistent the extreme limitations she assessed. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Accordingly, the Court finds substantial evidence supports the ALJ's conclusion that Dr. Flores' opinion was not persuasive, as it was poorly supported, and inconsistent with the medical evidence. <u>See Woods</u>, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); 20 C.F.R. §§ 404.1520c(a)-(c)(1)-(5), 416.920c(a)-(c)(1)-(5). The ALJ's findings and conclusions comply with the controlling regulations and are free from reversible legal error. <u>Id.</u>; <u>Smolen</u>, 80 F.3d at

1279; Burch, 400 F.3d at 679.

**B.      The ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Symptom Testimony and Did Not Err in Deciding to Omit Such Limitations from the RFC Assessment**

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his symptom testimony, and failed to include the limitations in the determined RFC, and as presented to the VE.  (Br. 18-21.)

1.      The Clear and Convincing Standard for Evaluating Symptom Testimony[5]

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

---

[5]  Although Defendant emphasizes disagreement with the standard in order to preserve the issue for future appeals, Defendant acknowledges the clear and convincing standard is the applicable standard for weighing credibility in the Ninth Circuit.  (Opp'n 8 n.3.)

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

2.    The Court Finds the ALJ Properly Provided Clear and Convincing Reasons

Plaintiff argues the ALJ's finding is not supported by substantial evidence because the ALJ failed to articulate a clear and convincing reason for discounting Plaintiff's alleged symptoms of severe pain, difficulty standing and walking, his need to elevate his legs, numbness, poor balance, and episodes of severe nausea and vomiting. Plaintiff contends the ALJ simply summarized Plaintiff's treatment history and weighed the medical opinions, and the ALJ's overall summary of evidence fails to state a basis for discounting Plaintiff's alleged symptoms. (Br. 19.) Like above, the Court is somewhat perplexed by the extreme proffer by the Plaintiff when the ALJ's opinion does not reflect such complete omission. (See AR 24-28.) The Court turns to the more pointed challenges and defenses thereto.

Plaintiff proffers the ALJ suggested Plaintiff's ability to walk is not as limited as alleged because records documented improvement in the ulcerations and sores to his feet, but Plaintiff highlights that in addition to sores, an MRI of the right foot revealed significant deformities, arthritic changes, plantar fasciitis, and degenerative changes (AR 800), but the ALJ failed to note these findings, which support Plaintiff's chronic foot pain aside from his diabetic ulcers. Plaintiff highlights he was repeatedly observed to ambulate with a cane due to pain and poor balance, and providers observed tenderness and pain in the feet. (AR 271, 318, 739, 740, 743-

44, 746, 749-50, 755, 757, 816, 840, 958, 978, 992, 1006, 1020-21, 1118, 1161-62, 1146, 1182. Plaintiff submits the "ALJ's vague assertion that Plaintiff 'has not been as limited in ambulation as a result of his feet to the extent alleged,' is wholly unsupported." (Br. 19.)

Before turning to the Defendant's response, the Court finds the Plaintiff's framing of this portion of the ALJ's opinion deficient, in that Plaintiff proffers the ALJ only based a discounting of claims regarding the ability to walk because of improvement to ulcers and sores. Indeed, the ALJ made extensive findings, balancing the records and complaints as a whole along the longitudinal timeline:

> The record does indicate that the claimant has reported work-related back injuries with resulting joint pain, particularly the right shoulder, knees, and low back (Exhibit 1F/10). He reported the onset of foot pain shortly after his alleged onset date that required injections to the bilateral plantar fascia (Exhibit 2F/44). CT imaging of his abdomen and legs found mild degenerative changes at T11-T12 (Exhibit 10F/7). X-ray of his right shoulder found no posttraumatic abnormality of the right shoulder but noted minimal degenerative arthritic change (Exhibit 3F/103). MRI of his right foot from December 2017 found ankle effusion and arthritis of multiple joints (Exhibit 14F/20-21).

> He reported the onset of balance issues in early 2018 and used a cane (Exhibit 2F/45). On physical therapy evaluation in January 18, 2018, he was noted to have abnormal posture with the right shoulder slightly lower than the left shoulder with slight winging on shoulder abduction and adduction (Exhibit 1F/10). He also presented with an antalgic gait with wide base of support and use of a single point cane. His hip range of motion was limited and he had tenderness to palpation to his shoulder, knees, and low back (Exhibit 1F/10-11).

> The claimant was noted to have ongoing pain to his feet through 2018 and 2019 (Exhibits 2F/58; 11F). Examinations found tenderness to palpation. He also reported the return of low back and right shoulder pain around July 2018 (Exhibits 3F/96-101; 5F/18). On evaluations, he was noted to exhibit painful range of motion, muscle spasm, and tenderness to multiple joints. He was also noted to have reduced strength to the right shoulder particularly. MRI of his thoracic spine in April 2019 found multi-level disc bulges, most notably at T2-3 and T6-7 with distortion of the thecal sac and moderate canal stenosis (Exhibit 10F/33). Imaging of his lumbar spine found multi-level narrowing and osteophytes (Exhibit 10F/32).

> In March 2019, he was noted to ambulate with a cane and had an antalgic gait on podiatry evaluation and continued to do so through 2019 and 2020 (Exhibit 11F/6, 12, 15, 23). On intake evaluation for physical therapy in October 2019, he presented with a single

point cane and was noted to have prominent plantar fascia and weakness to the right foot and ankle (Exhibit 14F/26). He required physical therapy again with initial evaluation in December 30, 2019 finding ongoing tenderness to palpation and need for a single point cane (Exhibit 14F/37). Treating notes through 2020 have observed ongoing reduced range of motion and increased muscle spasm (Exhibit 16F/16, 79, 99). The undersigned does find the above limitations, particularly restrictions in reaching with the right upper extremity.

However, the overall record does not fully support his allegations, given overall treatment and medical findings. Imaging of his shoulder in 2017 found degenerative changes but they were described as "minimal" (Exhibit 3F/103). Also, he was noted to improve with physical therapy to manage joint pain, with notes in March 2018 observing notably increased range of motion and strength as well as increased activities of daily living (Exhibit 1F/12). He was advised on re- evaluation soon to determine date of potential discharge.

EMG in July 26, 2018 found polyneuropathy but no lumbar radiculopathy (Exhibit 5F/23). Biopsy of his right leg in September 2018 found sampling of his right distal calf exhibited abnormally low nerve fiber density consistent with small fiber neuropathy (Exhibit 5F/30).

Podiatry evaluation in October 2018 found no notable abnormalities in strength or range of motion to major muscle groups, particularly of his lower extremities (Exhibit 2F/58). Primary care evaluations in October and November 2018 did not find notable loss of strength to most of the extremities, with some reduction to his right shoulder, hips, and ankles but no observed atrophy (Exhibit 5F/3-7, 11). He did not present with an assistive device or show abnormalities in gait. Podiatry evaluation in December 2018 also did not note diminished strength or loss of range of motion (Exhibit 11F).

The overall record has continued be limited for consistent signs. Though podiatry evaluations found ongoing use of a cane, he has not been consistently observed with antalgic gait or need for an assistive device (Exhibits 11F; 12F; 16F/296). Endocrinology notes in 2020 have been limited for observed disturbances in gait or need for an assistive device (Exhibit 12F). He has also not consistently exhibited motor atrophy, tenderness or loss of range of motion of his spine or extremities (Exhibits 9F/21; 11F; 12F). He also reported improvement in symptoms with physical therapy, particularly with respect to his leg and lower back pain (Exhibit 11F/17, 20).

Therapy notes observed ongoing improvement in reduction of symptoms and increasing functionality with discussions of discharge around June 2020 (Exhibit 14F/60-62). The record is overall limited for consistent reports of shoulder pain or observed loss of range of motion, with limited treatment for such. Primary care evaluation as of August 2020 noted no reported joint or

muscle pain and good management with medication (Exhibit 16F/9).

The claimant has a history of diabetes (Exhibit 3F/2). Reported symptoms have included dysesthesias of the extremities and neuropathy (Exhibits 3F/2; 4F). In August 9, 2017, he underwent a podiatry evaluation due to a blister and wound on his right foot following a long period of standing (Exhibit 2F/2). He presented with tenderness to palpation around his foot and ankle and was noted to have poor turgor and texture to the skin on his feet (Exhibit 2F/2-3). His nails were elongated, dystrophic, discolored with subungal debris. Closed ulceration was noted but also erythematous skin. He was noted to have light touch sensation diminished bilaterally.

He required debridement of the skin and post-op shoes and dressings. Subsequent examinations found ongoing erythematous skin and decreased sensation along with ulceration to the right foot and need for metatarsal gel strap to his left foot (Exhibit 2F/5-12). He was noted to use a wheelchair to keep weight off his foot, as it was noted to persist for more than 6 weeks despite debridement (Exhibits 2F/14-19, 24, 28; 3F/6). He was advised on diabetic shoes with accommodative inserts. He was noted to have new ulcerations in July 2018 (Exhibit 2F/51-52).

As noted above, biopsy and nerve conduction studies have found indications consistent with neuropathy (Exhibit 5F/23, 30). Ongoing endocrinology evaluations have found loss of sensation to his feet (Exhibits 4F; 8F; 12F). He has also required pain management for neuropathy and dysesthesias (Exhibit 3F/58). Considering the treatment for neuropathy and foot ulcerations, the undersigned limits the claimant's lifting and carrying as well as climbing.

However, the record indicates he has not been as limited in ambulation as a result of his feet to the extent alleged. Additionally, the record also indicates a history of poor management of his diabetes being a contributing factor to his foot wounds. By October 2017, the wound on his right foot was noted to be healing well with minimal edema or erythema (Exhibit 2F/21). Evaluations found ongoing improvement to appearance and depth (Exhibit 2F/23, 25). He was directed to partly weight-bear by November 2017 and was noted to have improved significantly by December 2017 (Exhibit 2F/35, 44). His primary care provider particularly noted he was out of his wheelchair by November 8, 2017 (Exhibit 3F/24). He reported no particular issues from foot pain upon getting his custom diabetic shoes with inserts by January 16, 2018 (Exhibit 2F/45).

He was continued to be encouraged to increase activity (Exhibit 2F/47, 49). He admitted in April 2018 to not be managing his diabetes well though he reported ongoing good response to his diabetic boots and reported he felt ready to work (Exhibit 2F/48). He was noted to ambulate with no particular difficulty and was not noted to have ongoing infection, though his nails continued to

show some abnormalities (Exhibit 2F/48-49). He returned to his podiatrist in July 2018 and reported new blisters after wearing sandals (Exhibit 2F/51). He reported better control of diabetes within two weeks and reported improvement of the new wounds (Exhibit 2F/54). He continued to report fewer notable symptoms with better control of his blood sugars in later 2018 (Exhibits 3F/74, 94; 4F).

He has since been noted to be better with medication but continued to have issues with complying with lifestyle advisories to manage diet and activity as well as use his continuous glucose monitor (Exhibits 8F; 12F). He continued to acknowledge improvement in symptoms with better management of his diabetes (Exhibit 11F/17). The record is otherwise limited for ongoing ulcerations for his feet.

The undersigned also noted the claimant has elevated BMI and body habitus consistent with obesity (Exhibits 4F; 12F; 17F). Obesity is recognized as a chronic condition that can aggravate other impairments, including musculoskeletal disorders and diabetes (SSR 19-2p). The undersigned has thus considered the combined effects of the impairment on functioning in combination with his other impairments, particularly considering stresses placed on the spine and feet. While the undersigned finds the above impairments to result in limitations, including in lifting, carrying, performing postural activities, and reaching, the undersigned does not find the combined impairments to be as limiting as alleged considering inconsistencies in evaluations through the record as well as noted issues with compliance in managing his diabetes.

(AR 25-27.)

Having laid out the bulk of the ALJ's discussion of the various alleged symptoms and related records, the Court finds the Plaintiff's framing of ignoring specific records to be not supported, and additionally finds apparent from the opinion that the ALJ did not only focus on the improvement of foot sores.  Id.  Based on this portion of the ALJ's opinion, turning to another of Plaintiff's specific challenges, Plaintiff argues the ALJ vaguely alluded to "improvement in symptoms," as a basis for discounting Plaintiff's symptoms, but failed to indicate how an unspecified degree of improvement contradicts Plaintiff's alleged pain and limitations, and failed to point to records that show a degree of improved functioning that contradicts Plaintiff's alleged pain and limitations.  (Br. 19-20.)  Plaintiff also argues while the ALJ referenced some initial noncompliance with diabetes medications, and noted that Plaintiff was ultimately provided an insulin pump which helped control blood sugars, the ALJ failed to demonstrate that any initial noncompliance was evidence of a lack of symptoms, or that

1  compliance with medications would have alleviated Plaintiff's disability.   Here, despite

2  ultimately managing to control his blood sugars, Plaintiff argues his symptoms of pain and

3  neuropathy remained, and there is no indication that his failure to initially adhere to a strict

4  medication regimen contradicts his alleged limitations.  (Br. 20.)

5      The Court rejects the Plaintiff's challenges.  The Court finds the ALJ reasonably declined

6  to find the record supported the full extent of Plaintiff's subjective testimony, and provided clear

7  and convincing reasons for doing so, supported by substantial evidence in the record.

8      As part of her overall analysis, the Court finds the ALJ properly found that the objective

9  medical evidence did not support Plaintiff's claims of disabling symptoms and functional

10  limitations.  (AR 24-28).  The ALJ noted that examinations largely found no abnormalities in

11  strength or range of motion (AR 26, 331 (5/5 muscle strength and normal range of motion), 470-

12  72 (normal strength), 477 (normal strength)); that Plaintiff was repeatedly observed without

13  antalgic gait or needing an assistive device (AR 26, 735, 765, 767, 770, 773, 1175); did not

14  consistently exhibit atrophy or loss of range of motion (AR 26, 645 (well nourished and well

15  developed), 740 (normal range of motion and muscle strength), 743 (same), 746 (same), 749

16  (same), 752 (same), 755 (same), 757 (same), 764 (well developed, well nourished, and no

17  atrophy), 766-67 (same)).   The Court finds substantial evidence supports the ALJ's findings.

18  The ALJ's reference of a lack of objective medical support can, in part, support the finding that

19  the ALJ provided clear and convincing reasons for discounting the symptom testimony.  See

20  Osenbrock v. Apfel, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (rejecting a claimant's allegations

21  of disability where "neurological and orthopedic evaluations have revealed very little evidence of

22  any significant disabling abnormality" in the extremities or spine); Meanel v. Apfel, 172 F.3d

23  1111, 1114 (9th Cir. 1999) (the ALJ properly discounted the claimant's complaints of disabling

24  pain by noting that she did not "exhibit muscular atrophy or any other physical signs of an

25  inactive, totally incapacitated individual").   The ALJ also noted that a September 2017 CT scan

26  found only mild degenerative changes at T11-T12 (AR 25, 708) and a shoulder x-ray one month

27  later found minimal degenerative changes (AR 25, 435).   See Burch, 400 F.3d at 681 (ALJ

28  properly discounted the claimant's allegations of severe low back pain because "the MRI and x-

rays show only mild degenerative disc disease at L5-S1, and mild dextroscoliosis" and there "was no apparent disc herniation or nerve root impingement").

Plaintiff has submitted no reply to counter the reasoning and records highlighted by Defendant in opposition.  The Court concludes the ALJ's use of the objective medical records to discount Plaintiff's testimony, was proper, reasonable, and supported by substantial evidence. Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); Smolen, 80 F.3d at 1279; Thomas, 278 F.3d at 955.  While the ALJ's use of the objective medical evidence is insufficient standing alone, the ALJ provided clear and convincing determinations when considered in conjunction with the ALJ's other reasoning concerning compliance with treatment and improvement with treatment, as discussed hereafter.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects . . . The ALJ also pointed out ways in which Rollins' claim to have totally disabling pain was undermined by her own testimony about her daily activities.") (citing 20 C.F.R. § 404.1529(c)(2)); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); 20 C.F.R. § 404.1529 ("We will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); Walker v. Barnhart, 148 F. App'x 632, 633–34 (9th Cir. 2005) ("The ALJ's identification of discrepancies between Walker's alleged symptoms and the objective medical evidence including treatment records, the x-ray, and the observations of other medical personnel also provided legitimate reasons for rejecting Walker's testimony."); Reichley v. Berryhill, 723 F. App'x 540, (Mem)–541 (9th Cir. 2018) ("The ALJ provided the requisite specific, clear, and

1    convincing reasons . . . [including] sufficiently [identifying] inconsistencies between Reichley's

2    testimony and the objective medical evidence.").[6]

3        Defendant also argues the ALJ's discussion of Plaintiff's treatment history reinforced the

4    rejection of Plaintiff's complaints of disabling symptoms and physical limitations.  (AR 25-27.)

5    As the ALJ noted, Plaintiff's compliance with his treatment regime was poor (AR 25-27, 321

6    ("Pt states that he has not been controlling his diabetes very well.  Pt states that he feels ready to

7    return to work"), 612 ("has not followed his diet and does not exercise"), 616 (same), 760 ("does

8    not seem to be taking the action that he needs to do")).  See Molina, 674 F.3d at 1112 (ALJ may

9    consider an unexplained or inadequately explained failure to seek treatment or to follow a

10   prescribed course of treatment) (citing Tommasetti, 533 F.3d at 1039).  The ALJ further noted

11   that Plaintiff had improvement with treatment (AR 25, 273 (reduced pain and increased range of

12   motion, strength and activities of daily living with physical therapy), 751 (physical therapy was

13   "helping"), 754 (same), 839-41, 888).

14       "Impairments that can be controlled effectively with medication are not disabling for the

15   purpose of determining eligibility for SSI benefits."  Warre, 439 F.3d at 1006; but see Holohan,

16   246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression

17   makes some improvement does not mean that the person's impairments no longer seriously

18   affect her ability to function in a workplace."); Lule v. Berryhill, No. 1:15-CV-01631 - JLT,

19   2017 WL 541096, at *7 (E.D. Cal. Feb. 10, 2017) ("Although Plaintiff's condition was 'stable'

20   and not worsening, there is no indication the record that the stability of her condition rendered

21   her able to perform work for an eight-hour day.").  The Court is not unreceptive to the Plaintiff's

22

23   [6]  This Court recently engaged in an extensive discussion of the difference between a lack of objective medical
     evidence, and inconsistency or conflict with the objective medical evidence as a clear and convincing reason.  See
24   Garcia v. Comm'r of Soc. Sec., No. 1:21-CV-00328-BAK, 2022 WL 3908307, at *9–12 (E.D. Cal. Aug. 30, 2022)
     ("The distinction between medical evidence simply failing to support a plaintiff's testimony and medical evidence
25   being inconsistent is critical because the latter may qualify as a specific, clear, and convincing reason to reject a
     plaintiff's testimony while the former does not . . . the Court considers the Rosel court's conclusions concerning a
26   need to clearly demonstrate something rising to the level of being demonstrably false or disproving testimony
     through citations to the objective record, in conjunction with the language in Robbins, guides the Court to find
27   inconsistency or conflict with the medical record, if it can be considered a different and standalone sufficient finding
     from a lack of objective medical evidence, to be more rooted in the ability of the Court to utilize 'ordinary
28   techniques of credibility evaluation.') (citations omitted).  Although not determinative to the challenge here, the
     Court incorporates that discussion herein by way of reference.  Id.

1   arguments concerning stability and improvement in relation to the longitudinal record.  See

2   Herrick v. Comm'r of Soc. Sec., No. 1:20-CV-01776-SAB, 2022 WL 1751049, at *13 (E.D. Cal.

3   May 31, 2022) ("Therefore, the Court finds the ALJ's discounting of Plaintiff's testimony on the

4   basis that his seizures are 'stable on medication' impermissibly isolates evidence favorable to the

5   ALJ's conclusion while not accounting for or addressing relevant and potentially conflicting

6   evidence, and fails to adequately account for the longitudinal record.").  The Court finds no error

7   here in the ALJ's reliance on reports of improvement and stability on medication, as well on

8   Plaintiff's periods of worse symptoms when non-compliant.

9          The Court finds the ALJ's reliance and balancing of these and other records is a clear and

10  convincing reason for discounting Plaintiff's symptom testimony, and is supported by substantial

11  evidence in the record.  See Warre, 439 F.3d at 1006; Tommasetti, 533 F.3d at 1039 (in assessing

12  credibility, the ALJ may consider an "unexplained or inadequately explained failure to seek

13  treatment or to follow a prescribed course of treatment.") (quoting Smolen, 80 F.3d at 1284).

14  Thus, the Court concludes the ALJ has provided multiple clear and convincing reasons in

15  support of discounting Plaintiff's testimony, and finds no legal error.  The Court now turns to

16  Plaintiff's related challenge to the ALJ's RFC determination.

17         3.     The Court finds the RFC Determination is Supported by Substantial Evidence

18         As an offshoot from the Plaintiff's challenge that the ALJ failed to identify clear and

19  convincing reasons for discounting Plaintiff's subjective symptom testimony, Plaintiff also

20  generally argues that because the ALJ discounted the symptom testimony, the ALJ failed to

21  account for Plaintiff's symptoms in the RFC and in the hypothetical question to the vocational

22  expert is error.  (Br. 20.)

23         A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20

24  C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20

25  C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, §

26  416.920(b) and (c), as well as the total limiting effects caused by medically determinable

27  impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v.

28  Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a

1   claimant can do past relevant work and at step five to determine if a claimant can adjust to other

2   work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable,

3   the hypothetical posed must include 'all of the claimant's functional limitations, both physical

4   and mental' supported by the record."  Thomas, 278 F.3d at 956.  When applying for disability

5   benefits, the claimant has the duty to prove that she is disabled.  42 U.S.C. § 423(c)(5)(A).  The

6   ALJ has an independent "duty to fully and fairly develop the record and to assure that the

7   claimant's interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006)

8   (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).

9          Above, the Court found the ALJ properly provided clear and convincing reasons for

10  discounting Plaintiff's symptom testimony, and properly discounted the limitations opined by

11  Dr. Flores.  In finding Plaintiff could perform light work, the ALJ analyzed the Plaintiff's

12  examination findings and medical imaging, as discussed above, and the Court finds the objective

13  medical evidence and other evidence in the record supports the reasonableness of the ALJ's RFC

14  determination.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm

15  the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his

16  decision is supported by substantial evidence . . . In making his RFC determination, the ALJ took

17  into account those limitations for which there was record support that did not depend on Bayliss's

18  subjective complaints."); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere

19  existence of an impairment is insufficient proof of a disability," and a claimant bears the burden

20  of proving the impairment is disabling).  The findings of the State agency medical consultants

21  also constitute substantial evidence supporting the ALJ's RFC finding, as Dr. Tayloe, M.D. (AR

22  68-69) and Dr. H. Jone, M.D. (AR 79-81), determined that Plaintiff could perform light work,

23  and the ALJ found their opinions persuasive, a finding Plaintiff did not challenge.  See Chaudhry

24  v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (ALJ properly relied more on non-examining

25  physician's opinion than examining physician's opinions to assess the claimant's RFC); Thomas,

26  278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as

27  substantial evidence when the opinions are consistent with independent clinical findings or other

28  evidence in the record."); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th

Cir. 1992) ("The ALJ stated that Matney had established he experienced some degree of pain and discomfort, however, he agreed with the opinion of Dr. Wheeler that Matney was capable of performing light work with certain limitations."); Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009).

Accordingly, the Court finds no harmful or reversible error in the ALJ's RFC determination, or in the weighing of the physician opinions.  See Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").  While Plaintiff argues the ALJ ignored critical evidence, the Court finds that contention not supported by the opinion and the record as a whole.  See Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  The Court finds the ALJ's RFC determination to be proper, reasonable, based on substantial evidence in the record, and free from reversible legal error.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.

### CONCLUSION AND ORDER

Based on all of the foregoing reasons, the Court finds: (1) substantial evidence supports the ALJ's rejection of physician Dr. Flores' opinion; (2) the ALJ provided multiple clear and convincing reasons for rejecting Plaintiff's symptomology evidence; and (3) the ALJ's RFC finding and presentation to the vocational expert was proper and supported by substantial evidence. The Court finds the ALJ's decision to be proper, supported by substantial evidence, and free from reversible error.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Luis Antonio Frausto. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   __October 3, 2022__                           _____

                                                                   UNITED STATES MAGISTRATE JUDGE

26